Finally, we have W.E. Partners Now, if this conversation gets heated, we can co-generate. Being pleased to court, my name is Steve Latham and I am representing W.E. Partners II in this action. As you know, we are dealing with the federal Section 1603 program in this appeal. Congress enacted Section 1603 as part of the American Recovery and Reinvestment Act of 2009. The purpose was to incentivize investments in the country's rapidly deteriorating economy. Congress wanted companies to invest money in defined projects so as to create jobs and boost the economy. Is there any point along a scale of, say, 1% to 100% of producing electricity as opposed to steam, where you'd concede that the purpose of the statute is not satisfying? Based upon the statutory language that Congress enacted, your Honor, I have to say no. Congress defined qualifying facilities for purposes of open-loop biomass facilities as simply producing electricity. This one does. If the production of hypothetical that you had a steam facility to heat all of New York City with its steam radiators? I missed the last part. I was assuming that you had a massive steam production facility. When I used to live in New York, we had steam radiators. You heated all of New York City, but you had generated enough electricity to light the CEO's office at Con Ed. You still would be entitled under your view to the 30%. Just to take what I think is a silly hypothetical, but you're barely producing enough electricity to light a light bulb. I would hope that wouldn't be the case. All the rest is steam, and your answer is the same. You win. Yes, because I was going to ask you about my little motion generating electricity, generating device that I carry when I walk, and it recharges the phone. You put that on top of a vibrating steam pipe, and that's enough? The short answer is, under the statutory language Congress created, I think the answer is yes. The good news here is that's not what W.E. Partners did. Let me ask you another question. When I look at 1603, the statute, I see that it sets up eight different categories of facilities that are going to be able to enjoy either the tax credit or the payback. One is qualified facilities. That's in one. That's basically electrics when you read it through 48A and 45. Then there's a category for a combined heat and power facility. That's in seven. That's a co-generating facility, right? Yes. So Congress had in mind these separate categories. Then reading through 45 and 48, you see that a co-generating facility is one that generates at least 20% electricity, right? Right. Okay. So if you're a co-generating facility and you generate at least 20%, you're going to get what? You get a 10% benefit as opposed to a 30%, right? What's the statutory authority that allows Treasury to give a 30% benefit to a co-generating facility? Well, as in the case of this facility, if it's a... Statutory authority. In the statute, where does the statute say that a co-generating facility can get 30% under any circumstances? If it's a co-generating facility that qualifies as an open-loop biomass facility. Where does the statute say that? Well, that's in part of 45 and 48 where it defines qualified facilities. In the regulation? No. Where in 45 and 48 do we say that a co-generating facility can get 30%? Well, a combined heat and power facility can also be an open-loop biomass facility, can be a combined heat and power facility. Where does it say that in the statute? I don't know that it addresses... It doesn't say that in the statute. I'm sorry? It doesn't say that in the statute. No, it's got the definition. But the regulation says that, right? Yes. So your source of authority for the federal government to give you money is not in the statute. It's in a regulation. I think it is in the statute because this facility... You're a co-generating facility, sir. It is. It's a co-generating facility. I'm going to admit that. You're a co-generating facility. The Congress had in mind that a co-generating facility is going to qualify here. And then when you read in through 48, the co-generating facility has to do 20% electricity to qualify. Well, you don't generate 20% electricity. No. And apparently... You were given a gift by the federal government. I don't think so because... There's no statutory basis for it. Congress made the choice apparently... There's a point to me in the statute where the statute says a co-generating facility can get something more than 20%. Because it qualifies as an open loop biomass facility. It can qualify as that or a combined heat and power facility. Evidently, Congress... It's a decision that some official over in the treasury made that said, we're going to cut some slack to co-generation facilities that don't generate 20% electricity. We're going to let them in the back door and give them not 10%, we're going to give them 30%. Because that's what Congress said. That's not what Congress said. Apparently, Congress prefers biomass. Where in the statute? Where did Congress say that? Congress says that when it defines what an open loop biomass facility is, and then Congress says those open loop biomass facilities get 30%. That was Congress's decision. We have to presume it was intentional. Run us through this language that you're talking about. You know the language I'm talking about. I'm reading out of 1603-7 and I'm reading out of 48-C-3. In 1603-D-1. 1603-which? D-1. D-1. Congress states that a qualified facility is defined as within the meaning of section 45 of the Internal Revenue Code. If you go to 45 of the Internal Revenue Code, it talks about open loop biomass facilities, which is a facility using open loop biomass to produce electricity. That's what we have here. To produce electricity. Not to produce electricity in something else. It doesn't say to only produce electricity. It does. Right. It says to only produce electricity in something else. Right. You are yourself a combined heat and power system. There's a separate category for you, seven. There's a separate statute for you, which is 48. I would respectfully disagree because we're in the category of open loop biomass facilities. Those facilities fit squarely within that definition. To produce electricity, even though you would produce in your hypothetical barely enough electricity to light a light bulb. I think it's important to keep in mind that this statutory program was not enacted for the purpose of maximizing the production of electricity. This one was to maximize investment in the economy. That's why it was- I knew that. I was saying here that he said to maximize the spending of government money. Maybe if it were 100% grant, but this was intended to spur the economy. The economy was going in the tank. They wanted to incentivize companies to make investments in defined facilities. Here the defined facility that fit this project to suit the needs of the customer and the economics was an open loop biomass facility. The qualified facilities in 1603-1 are electric facilities. Well, they're open loop biomass facilities so long as they produce electricity. Manufacturing electricity, not manufacturing steam. I don't think it's anywhere specified in the statute. There's nothing in the statute that says you can only produce electricity. Doesn't it strike you as odd that Congress made it very, very clear that the maximum benefit that a cogeneration facility could get if it qualified was 10%. 10% is the max that you can get if you are a cogenerating facility. It sets those types of percentages in various areas. That's what it says. It sets up a category. It says you're a cogenerator. First place you got to generate at least 20% electricity. Then you're going to get only a 10% gift. That's what it says if you're a combined heat and power facility. That's exactly what you are. You're a combined heat and power facility and you're going to get 30%. Because it uses open loop biomass. That doesn't make any sense. How do we go behind the words of the statute? It's not the words of the statute. It's the words of a regulation. You haven't pointed to a single word in the statute that says that a biomass plant producing steam is a qualifying facility under the statutes you cite. That's an electric producing company. That's because, Your Honor, the definition of open loop biomass facilities don't address what else is produced. The notice, 2060, it's always been the case that facilities that generate different types of energy can be qualified. Here the definition that Congress pointed back to was the definition of open loop biomass facility. It was qualified as a result of administrative grace. The distinction that the Congress made was that they said if you're a real electric company you're going to get 30%. If you're a co-generating facility, the max you can get is 10. You try to explain to the ordinary person in the street, I represent, I build a co-generating facility and guess what? I got 30. How'd you do it? Because somebody over in Treasury wrote a regulation or wrote a advisory opinion of some sort that said we're going to cut some slack. This is to co-generating facilities that don't even produce 20%. The Congress said if you're a co-generating facility, you can't get a penny if you don't generate at least 20% electricity. You're generating less than 2% electricity and you're claiming 30%. Everyone agrees here it would not qualify as a combined heat and power facility under this statute. Everyone also agrees, including the government and the court of federal courts. Combined heat and power facility and if you go from where you go to paragraph 7 to 48C3 you have to be producing at least 20% electricity to qualify and you weren't. So you didn't. Under that category. But you asked about a continuum, your honor, from 0 to 100, 1 to 100 as far as how much electricity an open loop biomass facility might make. Congress didn't set that out. They just said you have to produce electricity and it's undisputed that this one does and it's been undisputed throughout that this facility is qualified. We have to interpret this and we have to interpret whether or not in the regulation statute you cited me where it said biomass to produce electricity, they also meant electricity and steam. It doesn't say electricity and steam or electricity and anything else, it says electricity. Or it doesn't say primarily to produce electricity or for the sole purpose. It just says to produce electricity. So you say, well, did that include steam? It doesn't exclude it. Well, is it ambiguous? Is it clear? I think it's clear and unambiguous. When Congress clearly spoke to how much money a cogeneration facility could get back and it said 10% but only if you got 20% electricity, that's a clear statement by Congress. And now you're telling me I go back over and I have to bootstrap into where you are by reading into the word electricity something else including biomass to manufacture electricity and a bunch of other things too. In our view, the contrary is significant because they did set forth a 20% under combined heat power but didn't set forth that here. If they wanted a minimum here for open biomass, Congress would have put it there. It was simply, are you generating some electricity? And again, this is not a 45 production incentive program. It's a put money into our economy program. And that's what WB Partners did here. So it's been, without dispute, below by the government, by the Court of Federal Claims, that this is a qualified facility under the terms of the state law. It's up to you how much more you want units. Sorry, Mr. Yellow Light. I'll stand down. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court. I'm Kathleen Lyon for the United States. In Section 1603, Congress created a temporary stimulus program in the form of one-time cash payments in lieu of federal tax credits to incentivize certain investments in specified energy property. Now, Congress's generosity was not unlimited, however, and it relied on established terms in the tax code that either explicitly or implicitly limit the reach of the stimulus program to specified energy property. And these limiting terms provided the framework in which Treasury examined WB Partners' application here and the grounds on which the requested payment was reduced to exclude the cost of steam production at the facility in excess of that needed for the production of electricity. What statutory authority do you see for the Treasury giving out a 30% reward here, payback to a cogeneration facility? Statutory authority. Statutory. Excuse me. Under Section 45 for the qualified open biomass facilities, well, if you look at the 45 credits to begin with, it is limited to simply the amount of electricity that's being produced. And if you have a qualified facility, then you get the credit for just as much as it's produced. So we believe there's something, and because of the notice, it's long been treated that if property under 45 has long been treated, that if you're making another kind of, if you're using another kind of energy source or making another kind of energy, you can, as long as you qualify as a qualified facility, you can get the kilowatt per hour. Qualified facility to produce electricity, right? Correct. Correct. And the allocation here was based on that. It was sort of limited to saying, look... But that's a decision that was not made in the statute, right? Well, Your Honor... I'm not going to suggest that somebody over at the Treasury ought to go to jail for handing out money to WB Partners. I'm just saying I didn't see any statutory authority. When I read the statute to say that, as you heard me to say, that under 16037, you can have a cogeneration facility. If you look at this title, the tax code at 48C3, you see what the definition is. Correct. And it's 20%. And then we look at the payback and we say, well, you don't get paid. If you get paid at all, you get paid 10%. Correct. So what's the rationale for giving 30% to a cogenerating facility that doesn't even produce 20% electricity? Right. There's certainly... We would say that since WB Partners is seeking compensation based on the basis of all of its property, it does create that tension with Section 1603D7, which says, look, you can get 10% of all of your property if you're making 20% thermal, 20% electricity, which they're not. And you're a cogenerating facility, right? Correct. That's how you get it. Right. Because you're not a pure power play, which is what 16031 is all about. Right. Right. And the notice is what the practice has been under 45, which is that cogeneration facilities can qualify as an open-loop biomass facility, but only the property, the property that is necessary to the production of electricity is going to be part of that facility. So we haven't disputed here that there is a qualified facility. You haven't cited me any statutory authority for that point of view. Well, this is the way that Section 45 has worked for a long time. We have statutes that the Congress passes, and we ordinarily try to enforce what the statute said. Yeah. And we have regulatory bodies who write regulations to interpret statutes, right, where the statute has an ambiguity, right? Right. Well, I was looking for it. I didn't see any ambiguities here. Well, certainly when Congress passed 1603 and when it added the 48A5 election to Section 48, I mean, it knew that this was the practice, that the notice, you know, preexisted this statute, and that cogeneration facilities have been treated as such. Well, reference the code. I'm sorry? Reference the IRS code. You're saying previous to 1603, when you were talking about tax credits, right, for cogeneration facilities, the Treasury had created an out for cogeneration facilities that didn't otherwise qualify for the tax credit under 48. They found a way to slip some tax credit in the past to the cogenerating facility that wasn't producing 20%. Right. Because that was based on a kilowatt per hour basis. And that tax credit was 30% preexisting before 1603. When did the 30%, 10% come in? In 2009. I think the election was also, the election under 48A5, which 16... I'm just talking about the amount of money they're getting back here. Right. That was added as part of the Recovery Act. Right. Right. So what happened before? What was going on before the Recovery Act, before 1603? Before 1603, cogeneration facilities were treated as they could be qualified facilities, whether they were, you know, so long as they, the property that was, so long as they had property that was necessary to the production of electricity. The portion of the property that was going to electricity they would treat for the tax credit, right? Correct. Correct. So they weren't just qualified. How much was the credit? The credit was based on the kilowatt per hour of the production of electricity. So if you have... It wasn't like where the incentives were created in 1603 to say the tax credit or the payback will be 30%. The 30%, 10% is a change from the previous way of giving benefits, right? For 45 facilities, yes. But we do know that Congress did the 30, 10 on purpose in the Recovery Act. Yeah. I mean, what it was doing was... Electrics get 30. Right. And the max that a cogenerating facility can get is 10. Right. Now, isn't the Congress telling you when they say that, that if you had a previous practice that gave a disproportionate amount in the same way to the cogenerating facility, you can't do that anymore? Because Congress set in the Recovery Act these amounts that could be given to the maximum amount that a cogenerating facility could get. Yeah. Well, I think the combined heat and power section of the code preexisted in 1603 as well. So it was just... But you wouldn't say that after the Recovery Act was passed, there was...Congress had specified the maximum amount that a cogenerating facility could get. Yes. If it was making the 20% electricity. If it made 20%. Certainly, yes. So doesn't it seem to you a little crazy that if a cogenerating facility made less than 20%, it would get more than 10? Yes. Well, Your Honor, I think that... How would you explain that? Well, we agree that you can't read... We agree that there is a potential conflict in the statute if you read it the way WVP wants you to. The way that we have seen it is that, you know, combined heat and power facility can get 10% of all of its basis regardless of the necessity of the property to that process if it makes at least 20%. Let me let you come back to your argument. Okay. I spent too much time. You say in your brief at page 48, if this court were to agree with our position in this regard, there'd be no need to proceed further. This is at page 48 of your brief? Mm-hmm. I had trouble understanding what that position was because you had to go back about nine pages to get a heading in the argument. Could you just give me, please, give the court, please, in a nutshell, four or five sentences that explain what this position is that would have no need for us to proceed further? Correct. We think that there's a statutory basis that would support the allocation here because qualified property has to be tangible property that's an integral part of the qualified facility here. An integral part means that the property has to be used directly in and it has to be essential to the completeness of the activity. An integral part in a statute? I'm sorry? The integral part language is in a statute? Yes, 48A5D, little i, 2. It has to be an integral part of a qualified facility. And what we don't need to go on to decide would be the reasonable allocation idea which comes from, I forget whether that's a regulation or the note, that's from the guidance, isn't it? Guidance, yes. What was the date of the guidance, by the way? I see a revised April 2011, but I didn't see an original issue. Yeah, I think it was first issued in 2009. Was that before or after this investment was made? That was before. Well, I believe the construction started here, I want to say 2010 or 2011, but I don't think that the actual application in this case was filed until December 2012. But the integral part only applies to other tangible property, not to tangible personal property, isn't that correct? Your Honor, if you... I'm looking at the statute. Right. Qualified property, which is tangible personal property, or something else, which is other tangible property, but only if the other tangible property is used in integral part, which would suggest that tangible personal property is not subject to that limitation, correct? Well, Your Honor, tangible personal property... Correct, as a matter of statutory interpretation. Of statutory interpretation, I think you could say that. That's correct. I think you could say that, yes. That is correct, not that I could say it, that is correct. Correct, but... I'm trying to be correct here, ma'am, not that you could say it. Yes, understood. Right, so then we go look at the definition and the regulations of what tangible personal property is as opposed to other tangible property, and it sure looks like these facilities are tangible personal property, not other tangible property. Well, a few things to say on that. The tangible personal property is generally a property that you can sort of pick up and move away, and what their facility is, these boilers and this whole system is a permanent structure here. You went through the regulations the same way I did, didn't you? Yes, I did. Yes, I did. Is it your position that the facilities here are other tangible property? Well, first, WEP in its reply brief... Yes or no? We think it's other tangible property. This is more like a permanent structure, and it's also... We should say that the regulations in Section 48 are not a perfect fit here, because they were written for the previous version of Section 48, which was a general business investment property... Investment credit, and so the types of things that you could get credit for under the old 48 are a little bit different now, because Section 48 now is limited to energy property, and so the types of... Not every piece of tangible personal property would get credit under 48, because it's just not related to energy production. In the past, with the general business investment credit, you might have gotten credit for the Xerox machine or the shelving on the walls and whatnot, but you can't say that that's energy property. There's only two kinds of property, right? Real and personal. Right. And the intersection is when you have, for example, when you're fighting about fixtures in the store, and are they permanently affixed to the real property? Right. And when you're saying tangible personal property, you're saying it's not something that is real property and is not affixed in a permanent fashion. Right. Right. What do the boilers fit into that? We think that these boilers... Are they room size? Sort of a building size. What's that? It's a building. There's these large boilers, and that's it. That's in the building. That's what the building is. That's what the structure is, and it's a permanent... or other tangible property, the boilers fit into? There's never been a dispute in this case that this property was property to which the integral part test applied. It was not addressed, is this other tangible property, is this tangible property? But if you go back, all the way back to the complaint, WVP was citing the integral part test, and on pages 18 and 20 of the record, which is paragraphs 16 and 22 of its complaint, it cites the integral part test, and it lays out the elements, and then in paragraph 22 of the complaint, it says, we meet all these requirements. It's essential. It's used in it. And then we cited to the integral part test in section 48 in our opening brief. They said nothing about it. The Court of Federal Claims believed it applied. They said nothing in their opening brief. It's only in their reply brief that they're suddenly saying, wait, this is not other tangible property, and the integral part test doesn't apply. I mean, it's never been disputed here that the integral part test. Well, what's the bottom line on how we leave this issue? I'm sorry? What's the bottom line on how we leave this issue? I mean, do we just assume that although your adversary is now complaining that his property here doesn't qualify for the integral part, we're going to stick him with it? No. Well, Your Honor, even if WVP is correct that this is tangible personal property, I don't see how it helps their argument any, because under the statute, if that would make them qualified property, they still have to be qualified property of a qualified facility. And as we've said, to be a qualified facility, only the property necessary to the production of electricity comprises the qualified facility in the first place under section 45. And so whether you look at it as, is this property essential to the activity at the facility or a tangible property to which the integral part test doesn't apply, you're still going to have to look at whether it's a property that's necessary to the production of electricity under 45. Very interesting, because you apply that test to a cogeneration facility, but you don't apply it to a cogeneration facility that's making 20% electricity. This whole notion that only the portion of the product is for production of electricity is not qualified. You're having a special limitation before you hand out a 30% check to a cogenerating facility. But if it was applying just as a cogenerating facility, you wouldn't be applying that test. Correct. I mean, that's what the statute... Well, it just seems strange to me again. Why would you have different tests for a cogenerating facility, whether it's applying as a pure cogenerating facility, or whether you, by regulation, backdoored it into a pure electric facility? Well, I think there is a potential difference between 1603-D7 and 1603-D1, which is, again, under 1603-D7, you can get all of your system property at 10%, regardless of whether it's necessary or not. But under 1603-D1, if you're cogeneration, you can get potentially 30% of the property that's truly necessary to the process. And those aren't... I can understand why they narrowed it down. I mean, the notion that the treasury would have bought the position of your adversary up front, which is that you've got a steam plant that's got enough steam to heat New York City, but enough electricity to light a light bulb, then you still get 30%. Treasury wasn't going to go for that. So you had to find a way to whittle something back. Right. Well, the allocation here, we think, was reasonable in light of the fact that you have all of this property that is overwhelmingly used for something that's not covered in the statute, but some of it is used for... My question still is, why are you given the cogenerating facility that doesn't make 20% a penny of the taxpayer's money? Your Honor, I guess that's... We read 1603-D1 or perhaps Section 45 a bit differently. I mean, we're looking at the notice that says cogeneration facilities can be qualified facilities. And we're just saying that not all the property here was part of that qualified facility. It can be a qualified facility because it uses biomass to make electricity as well as steam.  Yeah. Can I ask you a question? Sure. I mean, I think you said a few moments ago that if one puts aside the word integral in Section 48 where there's the two different tangible property subsections, one of which has that word and one of which, at least as printed in the appendix, doesn't. I can't quite tell what the proper paragraphing would be. But putting that aside, you said something about the statute. I think maybe Section 45 already requires that the facility be necessary to the production. Where's the word necessary? That's in the notice. Right. That's what I thought. That's not statutory. I didn't... Okay. Correct. I mean, that's the way it has been treated. But that's not statutory. Correct. Correct. But that is how we're looking at it. Wrap up, counsel. Okay. And with respect... I think their chief argument against the allocation here is giving any deference to the guidance here. And I would just say on the qualifying and non-qualifying activity distinction, we think that the notion of qualifying and non-qualifying is built into the statute in 48. The word qualified or qualifying appears 30 times in Section 45, which presumes that some things won't qualify. I think what they're really arguing about here is this notion of activity, non-qualifying activity and qualifying activity. The fact is the specified energy property that's listed in 1603D is a discrete list of property that focuses on particular property used for a particular purpose. And every piece of property that qualifies under 48 is engaged in a particular activity. And so the activity here at a 45 facility is the production of electricity. And we think that Treasury made sensible rules here that said, look, we're going to allocate in some reasonable way to reflect the basis of the property that was used in the activity that was covered by the statute and not otherwise. Do you have any further questions? Thank you, counsel. Thank you. It's noteworthy that Treasury chose to give W.E. Partners 100% of the grant it sought for a substantially similar project. The only real difference being it used two boilers instead of three. Or in their view, the real difference is it was mistaken the first time and then it woke up to the proper treatment the second time. That is their view. What is your view about whether this is other tangible property or tangible personal property under 48.A5D? We think it is clearly tangible personal property rather than other tangible property. Are the boilers affixed? I'd hate to have OSHA inspect it and find out they're not. No, but what's important is that there's testimony in the record about why this particular design was chosen. Wait a minute. You said no. So they're not affixed. Let me repeat what you said. No. But what's important is... I'm sure they're affixed for now, but what is important is that they're removable. Why they used these three package boilers was because they could be disassembled and taken from the site. Is it your view that if they are indeed movable and they are 48.A5D1, tangible personal property, that this phrase, but only if such property is used as an integral part, does not apply or that it does apply? That phrase does not apply to tangible personal property. Did you argue that either in the Court of Federal Claims or here? It was not raised because there wasn't a contention that this was not qualified property. The contention was this other stuff about qualifying activities, and so it wasn't really an issue. Down below, it was undisputed that this was a qualified... It was certainly an issue here. It is on appeal, definitely. On the appeal, did you say integral? Why are we talking about integral? It's just not applicable to this? We did when we replied to the government's brief. That was one of our key points, is that the integral aspect doesn't deal with any of this property because it's all tangible personal property. I have to be quick. You do. I have to be really quick. May I wrap up or do? Wrap up. Thank you. It was substantially undisputed down below that this is a qualified facility. It meets the statutory definition as a qualified facility. Everything used in the facility is tangible personal property, and that's qualified property or specified energy property for the statute. Under the language of the statute, that's the end of the story. Congress chose because you use open-loop biomass, you get 30%, and that's the end of the story. There's nothing about qualifying or non-qualifying activities. As the CFC Judge Horne found in the RP1 case, Treasury just made that up. There's nothing about it happening. When we started the argument and asked you a silly hypothetical, you answered yes, indeed. Congress intended to have an absurd result. The answer is it says what it says, but that's not the case you had before you. It's just as borderline absurd. I think that would be absurd if somebody actually built something like that, but we don't have that here. We have a soundly engineered... If you could tell somebody you were going to get 30% of the investment back from the federal government, I'm sure the boys in Wall Street would have been happy to finance the steam facility, the heat in New York City. The customer wouldn't have been very thrilled they'd had to pay for all those hundreds of... They would have been shocked when they met with the treasurer. We've got a big bill. Thank you, counsel. Thank you. That concludes the oral arguments, and these matters will be taken under submission. Thank you. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.